**STATE of Iowa, Plaintiff-Appellee,**

v.

**Vincent Paul GRIFFIN,
Defendant-Appellant.**

**No. 85–264.**

Court of Appeals of Iowa.

Jan. 29, 1986.

Charles L. Harrington, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., and Roger A. Hurdle, Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SNELL, Judge.

On September 21, 1984, defendant Vincent Paul Griffin was charged by trial information with sexual abuse in the second degree. The alleged sex acts were stated in the trial information to have occurred "on or about the week of November 6–13, 1983." Griffin's trial counsel filed a motion for bill of particulars requesting information as to the date, time, and location of the acts charged and what specific actions by Griffin supported the charge. The trial court denied that motion.

Griffin's counsel also filed a pretrial motion in limine seeking to exclude hearsay

testimony from the victim, eight-year-old A.G., regarding statements made to her by another child, B.J., alleging that Griffin also had sexual contact with B.J. The trial court sustained this motion. However, during A.G.'s redirect examination at trial the prosecutor asked A.G. if she thought B.J. learned a sexual game from Griffin. An objection to this question was sustained, but the court refused to strike the question from the record. No motion for mistrial was made and the jury was not admonished to disregard the question.

A.G. testified concerning three incidents of sexual abuse by Griffin. She described two as occurring "possibly in summertime" and the third as occurring "longer ago than last Christmas." Three other witnesses testified concerning statements made to them by A.G. Unsuccessful hearsay objections were made to some of this testimony.

At the close of the State's evidence, Griffin's counsel moved for judgment of acquittal because no evidence was presented as to when the alleged acts took place. The trial court overruled the motion. The motion was renewed at the end of the trial and again overruled.

The jury found Griffin guilty as charged. Griffin's motion for new trial was denied and he was sentenced to a term of incarceration not to exceed twenty-five years.

On appeal, Griffin asserts that: 1) he was denied a fair trial by the trial information's lack of specificity regarding the date of the offense; 2) questioning concerning prior acts was improperly admitted and the jury should have been admonished; and 3) hearsay evidence was erroneously admitted.

■ *Bill of Particulars.* Griffin initially contends that the trial court erred in denying his motion for bill of particulars. The decision as to whether a motion for bill of particulars should be granted or denied is discretionary with the trial court and is upheld on appeal in the absence of an abuse of discretion. *State v. Marti,* 290 N.W.2d 570, 576 (Iowa 1980); *State v. Gartin,* 271 N.W.2d 902, 912 (Iowa 1978). If

the defendant is apprised of the particulars of the offense sufficiently from whatever source to fairly enable him to prepare a defense, failure to include particulars in the trial information is not fatal. *Marti,* 290 N.W.2d at 576; *State v. Willis,* 250 N.W.2d 428, 431 (Iowa 1977). The minutes of evidence may be considered when determining whether a bill of particulars should be granted. *Marti,* 290 N.W.2d at 577. The defendant has the heavy burden of demonstrating that the court's denial of his motion was "for reasons clearly untenable or to an extent clearly unreasonable." *State v. Buck,* 275 N.W.2d 194, 195 (Iowa 1979).

Griffin relies on the due process guarantee of the fourteenth amendment which requires that the accused be advised of the specific charge against him. "Specifically, the defendant should be apprised of the crime charged with sufficient certainty to enable him to prepare his defense and to protect against another prosecution for the same offense." *Rosen v. United States,* 161 U.S. 29, 40, 16 S.Ct. 434, 438, 40 L.Ed. 606, 609 (1896).

In this case, the trial information and minutes of testimony informed Griffin of the name of the crime with which he was charged (second-degree sexual abuse), the code section defining the offense, the name of the victim, and advised Griffin the illegal acts occurred "on or about the week of November 6–13, 1983." The minutes of testimony additionally advised Griffin of specific acts which allegedly constituted sexual abuse of a child. The minutes stated that the sex acts against A.G. began in the fall of 1982, and continued into the summer and early November of 1983. Griffin was also informed by the minutes of an incident of sexual abuse which occurred in Griffin's truck when he was taking A.G. fishing. The additional minutes advised Griffin that in early November of 1983, Loretta and Faye Netherland arrived at A.G.'s home in Columbus Junction and discovered Griffin alone with A.G. and her sister. A.G. became very upset and told Faye that Griffin "had tried to touch her in her private areas." The additional minutes also stated that the first incident of sexual

abuse and the fishing incident occurred in the summer when she lived in a trailer, listed the specific acts that occurred there, and Griffin's comments to A.G.

A trial information must substantially comply with the form delineated in Iowa R.Crim.P. 4(7)[1]:

7. **Contents of indictment.** An indictment is a plain, concise, and definite statement of the offense charged.... The indictment shall include the following:

a. The name of the accused, if known, and if not known, designation of the accused by any name by which the accused may be identified.

b. The name and if provided by law the degree of the offense, identifying by number the statutory provision or provisions alleged to have been violated.

c. *Where the time or place is a material ingredient of the offense a brief statement of the time or place of the offense if known.*

d. Where the means by which the offense is committed are necessary to charge an offense, a brief statement of the acts or omissions by which the offense is alleged to have been committed. No indictment is invalid or insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in a matter of form which does not prejudice a substantial right of the defendant.

■ Iowa Code section 709.3 defines second-degree sexual abuse and does not make a particular time period a material element of the offense. Furthermore, under Iowa law the State does not have to elect or prove a date certain in order to prove sex crimes such as incest or statutory rape since the exact time of the act is not material. *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970).

In *Rankin*, the defendant requested that the State elect a date with reference to day, month, and year that the alleged acts were

committed. The request was denied and no attempt was made to prove that the alleged acts occurred on a particular date. However, the court found that the evidence at trial showed that the defendant had "carnal knowledge" of his eight-year-old daughter three or more times between June 17 and July 24, 1968. *Id.* The court stated that some liberality must be permitted in the specification of time and place where young children are involved and concluded that:

A person should not be able to escape punishment for such a disgusting crime because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such shocking activity.

*Id.* at 172.

The Iowa Supreme Court is not alone in allowing less specificity regarding time where a charge involves sexual abuse of children. In *State v. Janetta*, 355 N.W.2d 189 (Minn.App.1984), the complaint stated that the alleged sexual conduct occurred "on several occasions up until" a specified date covering almost a two-year time frame. The minor victims were unable to remember the exact dates of the alleged incidents. The Minnesota court concluded that "given the specificity regarding the names of the child victims, the place of occurrence and the range of time, it was not impossible for appellant to defend himself on these charges." *Id.* at 195; *see also State v. Waukazo*, 269 N.W.2d 373, 375 (Minn.1978) ("It is not always possible to know with certainty when an offense or offenses occurred. This is especially true in cases like this where there is a minor victim who does not complain to the authorities immediately.")

Likewise, in *Merry v. State*, 166 Ind.App. 199, 335 N.E.2d 249 (1975), the defendant argued that the information was insufficient to adequately inform him of the sexual abuse charges against him where it al-

---

**1.** This rule is applicable to charges brought by information pursuant to Iowa R.Crim.P. 5(5) which states "The term 'indictment' embraces the trial information, and all provisions of law applying to prosecutions on indictments apply also to informations...."

leged an extended time period from "on or about the fifth day of December, 1970, to on or about the fifth day of September, 1973." The Indiana court found that the information sufficiently notified the defendant of the charge against him and stated time and place of the alleged crime with "sufficient particularity to show that the offense was committed within the statute of limitations." *Id.* 335 N.E.2d at 256–57.

Similarly, in *State v. Wonser,* 217 Kan. 406, 537 P.2d 197 (1975), the information alleged that the defendant committed indecent liberties with a child "sometime during the first part of August, 1972." The fourteen-year-old victim and the other witnesses could not testify at trial to a more specific date. The Kansas court found that the defendant's constitutional rights were not violated, concluding as follows:

> This court has held on numerous occasions that the precise time of the commission of an offense need not be stated in the indictment or information. Except where the time is an indispensable ingredient of the offense, it is sufficient if shown to have been within the statute of limitations. (citations omitted) Time was not an indispensable ingredient of the crime charged and the crime was shown to have been well within the statute of limitations. Time had nothing to do with the nature and cause of the accusation.

*Id.* 537 P.2d at 198.

In the case at bar, the victim was an eight-year-old girl. She testified that Griffin had admonished her not to tell anyone about the sexual acts. She, therefore, did not immediately complain to her mother or the authorities. Griffin was apprised of the specific acts involved, the identity of the child victim, and a time frame of one week. Sufficient information was given regarding the other acts of sexual abuse by acts, victim, location or occasion to enable Griffin to prepare a defense. The victim and other witnesses further limited the time frame for all of the sexual abuse incidents at trial. A.G. testified that the first sex incident occurred in the summer when she and her mother lived in a trailer

in Columbus Junction. A.G.'s mother testified that they lived in the trailer from April of 1981 until October of 1982. A.G. testified that the fishing incident occurred in the summer, again while she was living in the trailer. The act which the Netherlands interrupted occurred while A.G. lived in a house in Columbus Junction, in the wintertime before Christmas. She lived in this house from October of 1982 until the time of trial. Mrs. Netherland testified that this event occurred in the first part of November, 1983. On cross-examination, A.G.'s social worker indicated that she had worked with the victim and her mother in attempting to pinpoint the date of the offense. The first two weeks in November were deduced because A.G. and her mother remembered another significant event to have occurred at the same time—a miscarriage suffered by A.G.'s aunt, along with her hospitalization.

■ We conclude that Griffin was fairly notified of sufficient particulars of the charge against him. Griffin did in fact present an alibi defense. He claimed that he was never alone with A.G. at her house, that he did not live near her in 1981, and that he never took her fishing. The form of the information did not prejudice any substantial right of Griffin's. Therefore, the trial court did not abuse its discretion in denying Griffin's motion for bill of particulars.

**Prior Bad Acts.** Griffin filed a pretrial motion for ruling on admissibility of evidence and a motion in limine requesting that the court find certain items of evidence and testimony inadmissible at trial including "testimony from [A.G.] as to statements made to her by [B.J.E.] alleging that this Defendant had sexual contact with [B.J.E.]." The district court sustained this portion of Griffin's motion. At trial, A.G.'s mother testified that she heard from her sister that at a birthday party A.G. told the other kids about a "worm game." When she asked A.G. about it, A.G. became very upset and finally explained that Griffin had told her about the "worm game"

which involved "when the boy put his pee thing in the girl."

When defense counsel cross-examined A.G., the following colloquy took place:

## CROSS–EXAMINATION BY DEFENSE

Q. Okay. Your aunt called your mother; right? A. No, she talked to her.

Q. Talked to her? Okay, and said that—who was doing what at Katrina's birthday? A. That B.J. and Jeff was trying to do stuff to Katie and me and Trina.

Q. Okay. B.J. and Jeff was trying to do something to Katie, you and Trina? A. Yes.

Q. Okay. You weren't the one that was trying to teach these kids the worm game? A. Huh-uh.

Q. Okay. Had it been called the worm game at Trina's birthday party? A. Yes.

Q. By whom? A. B.J.

Q. By B.J.? Okay, you didn't use that term? A. Huh-uh.

MR. ADAMS: Okay. Thank you. I have no further questions.

What Griffin protests is the line of questioning pursued by the prosecutor on A.G.'s redirect examination.

## REDIRECT EXAMINATION

BY PROSECUTION:

Q. [A.G.], do you know where B.J. learned the word worm game?

DEFENSE COUNSEL: Objection, Your Honor, based on hearsay. It's irrelevant.

PROSECUTOR: Defendant opened this up, Your Honor.

THE COURT: Overruled. She may answer if she knows.

Q. It means you can answer. Do you know where B.J. learned that word? A. No.

Q. Do you think he learned it from Paul?

DEFENSE COUNSEL: Objection, Your Honor, leading, highly prejudicial. The question has been answered.

THE COURT: Sustained.

\* \* \* \* \* \*

DEFENSE COUNSEL: Excuse me. I ask that question be stricken from the record.

THE COURT: Well, for purpose of preserving the record, the question needs to be there.

There is no doubt that the court's rulings on Griffin's pretrial motion regarding B.J.'s statements to A.G. rendered the evidence elicited during A.G.'s examination at trial inadmissible. However, the record shows that defense counsel opened the area for examination by raising a question as to where the "worm game" originated.

■ The scope of the State's redirect examination was initially proper. "The rule in Iowa is that when one party introduces inadmissible evidence, with or without objection, the trial court has discretion to allow the adversary to offer otherwise inadmissible evidence on the same subject when it is fairly responsive." *State v. Padgett,* 300 N.W.2d 145, 147 (Iowa 1981) (quoting *State v. Pepples,* 250 N.W.2d 390, 394 (Iowa 1977)).

A.G. had previously testified that Griffin had taught her the "worm game." Defense counsel on A.G.'s cross-examination elicited testimony that at the birthday party B.J. had used the term rather than A.G. The State was entitled to inquire on redirect as to whether A.G. knew where B.J. learned the term. The trial court could reasonably find that this question was fairly responsive to the testimony elicited by defense counsel on cross-examination.

Griffin also argues that the unanswered question, "Do you think he learned it from Paul?" was highly prejudicial. He argues that because the trial court did not strike the question from the record, it allowed the jury to consider a suggestion that Griffin committed similar sexual acts with other children.

■ Defense counsel did not request that the jury be admonished, nor was a motion for mistrial made based upon any such improper suggestion to the jury. Any claim that Griffin was denied a fair trial on this ground has been waived. Furthermore, the defense objection to the question was sustained and no answer was elicited from the witness. We find that Griffin was not prejudiced by the question, and, therefore, no error was committed by the trial court in so ruling.

**Hearsay Evidence.** Griffin next contends that the trial court erred in overruling Griffin's hearsay objections to the testimony of three witnesses—Chief Deputy Investigator Ron Gardiner, A.G.'s examining physician John Fusselman, and Social Worker Jean McIntosh. Griffin argues that these witnesses simply recounted what A.G. had told them, reinforcing A.G.'s allegations to the jury and, therefore, their testimony constituted inadmissible hearsay.

■ Iowa R.Evid. 802 provides that "hearsay is not admissible except as provided by the Constitution of the State of Iowa, by statute, by these rules, or by other rules of the Iowa Supreme Court." Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Therefore, extra-judicial statements not admitted to prove the truth of what was said, do not constitute inadmissible hearsay. One kind of extra-judicial statement which is not hearsay at all is a victim's complaint to appropriate authorities. "Assertions by testifying witnesses as to *the fact of complaint* uttered to them by the prosecutrix are admissible in this type of case when offered as corroboration of the prosecuting witness. The purpose of such offer of evidence is not to show the truth of the matter asserted in the utterance, but only that a complaint was uttered by the woman. The hearsay rule is not involved." *State v. Grady*, 183 N.W.2d 707, 713 (Iowa 1971). However, the scope of such evidence is limited. Where the victim's credibility has not been impeached in any respect, the testimony of those witnesses to whom such complaint was uttered is to be limited to "the fact of complaint including, of course, so much of the complaint as identifies 'the time and place with that of the one charged' or in other words, so much as will identify the occurrence complained of with the crime charged. Any further terms of her utterance are not only immaterial for the purpose of corroboration, but practically turn the statement into a hearsay assertion and as such is inadmissible...." *Id.* at 716.

Notwithstanding, the court in *Grady* recognized an exception to its general rule by pointing out that "in cases where the prosecutrix is a very young child the rule is not to be applied with the same strictness as when the injured female has reached such an age as to have an understanding of such matters." *Id.*

In the case at bar, the victim was only eight years old. Sexual intercourse had never been explained to her, she had not started her period, and her mother had never talked with her about sex. Thus, the victim described the incidents in the only terms she knew. This case is an example of the one specifically set apart in *Grady* and does not call for strict application of *Grady's* nonhearsay rule.

■ Furthermore, it is questionable if the rule enunciated in *Grady* has any application in the case at bar because here the victim's credibility was definitely in issue. During cross-examination of A.G., defense counsel uncovered discrepancies apparently significant enough for her testimony to be labeled on appeal as "fraught with inconsistencies." These inconsistencies placed A.G.'s credibility in question and, therefore, what she had reported to authorities on prior occasions became highly relevant to establishing her veracity and consistency. For this reason the testimony of those witnesses to whom A.G. uttered her prior complaints of sexual abuse would not be restricted solely to *Grady's* "fact of complaint."

We conclude that the trial court committed no error in overruling Griffin's hearsay objections.

AFFIRMED.